IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


LAURIE A. WELLS,                          06-CV-853-BR

       Plaintiff,                          OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

       Defendant.


JAMES S. COON
KIMBERLY K. TUCKER
Swanson Thomas & Coon
820 S.W. Second Avenue, Suite 200
Portland, OR 97204
(503) 228-5222


       Attorneys for Plaintiff

KAREN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue
Suite 600
Portland, OR  97204-2902
(503) 727-1024


1 - OPINION AND ORDER

**MICHAEL MCGAUGHRAN**
Office of the General Counsel
**LEISA A. WOLF**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue
Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-3621

       Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Laurie A. Wells seeks judicial review of the
Social Security Commissioner's final decision in which he denied
Wells's application for Disability Insurance Benefits (DIB) and
Supplemental Security Income (SSI) under Titles II and XVI of the
Social Security Act.

    This Court has jurisdiction under 42 U.S.C. §§ 405(g) and
1383.  Following a review of the record, the Court **REVERSES** the
Commissioner's decision and **REMANDS** the matter for further
administrative proceedings.


## ADMINISTRATIVE HISTORY

    Wells filed for DIB and SSI in 2001.  Tr. 11.[1]  Her
application was denied initially and on reconsideration.
Tr. 176-78.  Wells was represented by an attorney at the hearings

---

    [1] Citations to the official transcript filed with the Court
on September 14, 2006, are cited as "Tr."

2 - OPINION AND ORDER

held by an Administrative Law Judge (ALJ) on May 7, 2003, and
October 9, 2003.  Tr. 91, 133.  On March 12, 2004, the ALJ issued
a decision in which he found Wells is not disabled.  Tr. 79.
After the Appeals Council denied Wells's request for review, she
filed a civil action in this Court.  *See Wells v. Barnhart*, No.
04-CV-1328-HA.  On July 22, 2005, the Court reversed the ALJ's
decision and remanded for further proceedings.  Tr. 223-39.

On February 21, 2006, a second ALJ held another hearing.
Tr. 21.  Wells; Medical Expert (ME) Robert J. McDevitt, M.D., a
board-certified psychiatrist; and Vocational Expert (VE) Patricia
Ayerza testified at the hearing.  Tr. 30, 48, 67.  Wells was
represented by an attorney.  Tr. 21.  On March 7, 2006, the ALJ
issued a decision in which he also found Wells is not disabled.
Tr. 11-20.  This decision became the Commissioner's final
decision after the Appeals Council denied Wells's request for
review.

On June 19, 2006, Wells filed this action seeking judicial
review of the ALJ's March 7, 2006, decision.


## BACKGROUND

Born on March 8, 1957, Wells was 48 at the time of the most
recent administrative hearing.  Tr. 86, 259.  She is a high
school graduate and had two years of college.  Tr. 86.  As both
ALJs noted, Wells asserts numerous medical limitations including,

among other things, reactive airway disease, asthma, scoliosis, back pain, sciatica, leg pain, possible fibromyalgia, and osteoarthritis.  Tr. 11, 15, 79.  Wells also has been evaluated for an alleged somatoform disorder.  Tr. 610-20, 672.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews v.*

4 - OPINION AND ORDER

*Shalala*, 53 F.3d 1035, 1039 (9ᵗʰ Cir. 1995).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9ᵗʰ Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9ᵗʰ Cir. 1986). The Commissioner's decision must be upheld even if the "evidence is susceptible to more than one rational interpretation." *Andrews,* 53 F.3d at 1039-40. The court may not substitute its judgment for that of the Commissioner. *Batson,* 359 F.3d at 1193.

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). *See also* 20 C.F.R. §§ 404.1520(a), 416.920(a). Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Yuckert*, 482 U.S. at 140. *See also* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(b).

In Step Two, the claimant is not disabled if the

Commissioner determines the claimant does not have any "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(c).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(d). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments).

If the Commissioner proceeds beyond Step Three, he must determine the claimant's residual functional capacity (RFC), which is an assessment of the sustained, work-related activities that the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e), 416.945(a). *See also* Social Security Ruling (SSR) 96-8p.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work that he has done in the past. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(e).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in

the national economy. *Yuckert*, 482 U.S. at 141-42. *See also* 20
C.F.R. §§ 404.1520(a)(4)(v), 416.920(e),(f).  Here the burden
shifts to the Commissioner to show a significant number of jobs
exist in the national economy that the claimant can do. *Yuckert*,
482 U.S. at 141-42. *See also Tackett v. Apfel*, 180 F.3d 1094,
1098 (9th Cir. 1999).  The Commissioner may satisfy this burden
through the testimony of a VE or by reference to the
Medical-Vocational Guidelines set forth in the regulations at
20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner
meets this burden, the claimant is not disabled.  20 C.F.R.
§§ 404.1520(g)(1), 416.920(f)(1).


## ALJ'S FINDINGS

At Step One, the ALJ found Wells's work since the onset of
her alleged disability did not constitute substantial gainful
activity.  Tr. 12.

At Step Two, the ALJ found Wells's impairments include
moderate degenerative disc disease, probable fibromyalgia,
scoliosis, dysthymia, an adjustment disorder with mixed anxiety
and depression, and a delusional disorder.  Tr. 15.  The ALJ also
noted Wells had received a "rule out diagnosis" of a somatoform
disorder.  Tr. 15.

At Step Three, the ALJ found Wells's impairments do not meet
or equal a listing.  Tr. 16.

At Step Four, the ALJ found Wells retains the RFC to lift twenty pounds occasionally and ten pounds frequently; can stand and/or walk for two hours of an eight-hour day; can sit for six hours of an eight-hour day; can occasionally climb ramps and stairs but cannot climb ropes, ladders, or scaffolds; can occasionally stoop, kneel, and crouch but not crawl; and has mild limitations in mental functioning that do not cause vocational limitation.  Tr. 19.  The ALJ also noted Wells averaged fifteen or twenty absences from work over a three-year period.  Tr. 19.

At Step Five, the ALJ found Wells is able to return to past relevant work as a secretary and/or receptionist.  Tr. 19-20.


**DISCUSSION**

Wells contends the ALJ erred by improperly rejecting the opinion of Mark Yerby, M.D., who evaluated Wells; by not fully crediting testimony by the ME; by failing to include Wells's somatoform disorder as one of her limitations at Step Two; by improperly evaluating Wells's credibility; and by making erroneous RFC findings at Step Four.

**I.    The Medical Opinions.**

An ALJ may reject an examining physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial

evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the opinion of an examining physician is uncontroverted, the ALJ must give "clear and convincing reasons" for rejecting the opinion. *Id*. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995).  The ALJ must give "specific, legitimate reasons" for rejecting the opinion of an examining physician when that opinion conflicts with another physician's opinion or with evidence in the record. *Magallanes*, 881 F.2d at 751.

A nonexamining physician is one who neither examines nor treats the claimant. *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so. *See, e.g., Morgan*, 169 F.3d at 600-01. A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Id.* at 600.

A.    **The Opinions of Mark Yerby, M.D., and Cheryl
      Brischetto, Ph.D.**

Wells contends the ALJ erred by not fully crediting Dr.
Yerby's opinion that Wells appeared to be suffering from a
somatoform disorder.  Tr. 672.  In general, a somatoform disorder
includes

>          the presence of physical symptoms that
>          suggest a general medical condition (hence,
>          the term *somatoform*) and are not fully
>          explained by a general medical condition, by
>          the direct effects of a substance, or by
>          another medical disorder (e.g., Panic
>          Disorder).  The symptoms must cause
>          clinically significant distress or impairment
>          in social, occupational, or other areas of
>          functioning.  In contrast to Factitious
>          Disorders and Malingering, the physical
>          symptoms are not intentional (i.e., under
>          voluntary control).

*Diagnostic and Statistical Manual of Mental Disorders* (*DSM-IV*) at
485 (4th ed. 2000).

The ALJ contrasted the opinions of Drs. Yerby and Brischetto
and expressly accorded more weight to Dr. Brischetto's
assessment.  Tr. 17.  Both doctors are examining physicians.  As
noted, if the medical opinion of an examining physician is
contradicted, the ALJ is only required to provide specific,
legitimate reasons for rejecting that opinion.  *Magallanes*, 881
F.2d at 751.  If the opinion of an examining physician is not
contradicted, the ALJ must provide clear and convincing evidence
for rejecting that opinion.  *Lester*, 81 F.3d at 830-32.

### 1.  Dr. Yerby's Opinion.

Dr. Yerby, a neurologist, initially evaluated Wells on July 24, 2003, and reviewed Wells's "radiographs and records" at a later date.  Tr. 672-73, 681.  Dr. Yerby noted Wells has degenerative joint disease and chronic pain in her back and concluded:

> [Wells] appears to suffer from a somatoform disorder in which her reaction to her symptoms is such that she is unable to function in a normal fashion.  This is not to say that she is exaggerating  or in any way misrepresenting her symptoms, but that her psychological condition is such that she is unable to function with the degenerative joint disease she currently has.

Tr. 672.

### 2.  Dr. Brischetto's Opinion.

Dr. Brischetto, a licensed psychologist, examined Wells on June 18, 2003.  Tr. 610.  Dr. Brischetto's examination included a number of evaluations, including the Minnesota Multiphase Personality Inventory-2 (MMPI-2).  Tr. 610. Dr. Brischetto opined:

> [Wells] indicated numerous somatic concerns.  The MMPI would suggest that she may have a tendency to use this somatic focus as an expression of emotional issues (without insight into doing so).  At the same time, however, she may have some real medical issues. This examiner did not have complete medical records to know if there is actual documentation for all of the

11 - OPINION AND ORDER

medical concerns that she mentioned.

> <u>In sum</u>, while there could be the
> possibility of some mild thought
> disorder present in terms of how she
> viewed the world as threatening and the
> possibility of somatic delusions per the
> MMPI, there was no clear indication of
> psychotic thought process on this
> occasion.

Tr. 619 (emphasis in original).

Dr. Brischetto offered the diagnostic impression of "R/O Undifferentiated Somatoform Disorder."  Tr. 620. "Undifferentiated Somatoform Disorder is characterized by unexplained physical complaints, lasting at least 6 months, that are below the threshold for a diagnosis of Somatization Disorder."  *DSM-IV* at 485.  There is no dispute that "R/O" means "rule out" in this context.  Thus, Dr. Brischetto provided Wells a "rule out diagnosis" of undifferentiated somatoform disorder.

**3.  ALJ's Decision.**

In the initial ALJ's decision dated March 12, 2004, Dr. Yerby's opinion was rejected for several reasons.  Tr. 84. The prior ALJ opined Dr. Yerby was a "consultative" physician rather than a treating physician.  Tr. 84.  Moreover, the prior ALJ concluded Dr. Yerby's diagnosis of somatoform disorder was outside his field of expertise because Dr. Yerby is a neurologist rather than a psychologist.  Tr. 84.  Finally, the prior ALJ concluded Dr. Brischetto's opinion rules out a diagnosis of schizophrenia.  Tr. 84.

12 - OPINION AND ORDER

In its July 22, 2005, Opinion, this Court concluded the ALJ ignored Dr. Brischetto's "rule out diagnosis" of undifferentiated somatoform disorder when he rejected Dr. Yerby's opinion. *See Wells v. Barnhart*, No. 04-CV-1328-HA, Opinion and Order at 14 (issued July 22, 2005). The Court noted the prior ALJ's "failure is notable because, when Dr. Yerby provided the same impression, the ALJ rejected it as beyond the scope of his expertise." *Id.* Thus, the Court remanded the case for further consideration. *Id.* at 17.

In his decision dated March 7, 2006, the second ALJ also rejected Dr. Yerby's opinion. Tr. 17. The ALJ disagreed with the Court's conclusion that Dr. Brischetto's "rule out diagnosis" supported Dr. Yerby's opinion. Tr. 17. The ALJ opined the Court

> apparently did not understand the meaning behind a "rule out" diagnosis, which is to eliminate or exclude a diagnosis from consideration. This is different than finding an individual actually has a certain diagnosis. Dr. Brischetto noted [Wells's] MMPI suggested a tendency to use somatic focus as an expression of emotional issues. . . . Thus, while [Wells] may have exhibited some characteristics of somatoform disorder, she did not meet the criteria necessary for such a diagnosis to be rendered. Thus, Dr. Brischetto rendered a "rule out" diagnosis of somatoform disorder. This is completely different from what Dr. Yerby assessed. . . . Given Dr. Brischetto is a licensed psychologist, her assessment and

13 - OPINION AND ORDER

                    opinion is accorded more weight than that
                    of Dr. Yerby.

Tr. 17.

          **4.  Discussion.**

          The record reflects a significant disagreement in the

prior proceedings as to the meaning of a "rule out diagnosis" and

as to whether Dr. Brischetto's "rule out diagnosis" supports or

contradicts Dr. Yerby's opinion.

          Neither Wells nor the Commissioner offers any evidence

or authority that would assist the Court in determining the scope

of a rule out diagnosis.  Nevertheless, there are limited but

instructive cases that discuss rule out diagnoses.  In *Simpson v.*

*Commissioner*, the court adopted "the common sense assumption that

'Rule-Out' simply means that a particular diagnosis is neither

ruled in nor out by the examining physician."  No. Civ. 99-1816-

JO, 2001 WL 213762, at *8 (D. Or. Feb. 8, 2001).  In *Gough v.*

*Metropolitan Life Insurance Company*, the court found a "R/O" or

"rule out" diagnosis indicated the doctor believed she "lacked

sufficient information to diagnose [the p]laintiff with either"

of the two conditions for which she evaluated the plaintiff.

No. 3:03-0158, 2003 WL 23411993, at *11 (M.D. Tenn. Nov. 21,

2003).  The court also noted "[a]lthough not part of the formal

DSM-IV convention, many clinicians also use the term 'Rule Out'

just prior to a diagnosis to indicate that not enough information

exists to make the diagnosis, but it must be considered as an

14 - OPINION AND ORDER

alternative." *Id.,* at *11 n.7.

        The Court finds this analysis persuasive.  Accordingly, the Court concludes Dr. Brischetto's "rule out diagnosis" indicates Dr. Brischetto believed additional testing would be required before she could draw a firm conclusion as to Wells's possible somatoform disorder.  Along the same lines, Dr. Brischetto stated Wells "may have some real medical issues.  This examiner did not have complete medical records to know if there is actual documentation for all of the medical concerns that she mentioned."  Tr. 619.  Dr. Brischetto's approach resembles a "differential diagnosis," which is defined as "the determination of which one of two or more diseases or conditions a patient is suffering from, by systematically comparing and contrasting their clinical findings." *Dorland's Illustrated Med. Dictionary* 490 (29th ed. 2000). *See also Clausen v. M/V New Carissa*, 339 F.3d 1049, 1057 (9th Cir. 2003)("Differential diagnosis, or differential etiology, is a standard scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated.").  Thus, Dr. Brischetto's opinion as to whether Wells suffers from a somatoform disorder does not appear to be conclusive, which is consistent with the Court's conclusion as to the meaning of a "rule out diagnosis."

In summary, the ALJ's decision to reject Dr. Yerby's opinion relies almost entirely on Dr. Brischetto's "rule out diagnosis."  Even though the ALJ is correct that the doctors' diagnoses were not the same, they also were not contradictory or "completely different" as the ALJ concluded.  In other words, Dr. Brischetto's opinion does not directly challenge the opinion of Dr. Yerby.  In addition, the ALJ did not cite any other medical evidence that contradicts Dr. Yerby's opinion.  Thus, the ALJ was required to provide clear and convincing reasons supported by substantial evidence in the record for rejecting Dr. Yerby's opinion.  *See Lester*, 81 F.3d 830-32.

Accordingly, the Court concludes the ALJ erred when he rejected Dr. Yerby's opinion without providing legally sufficient reasons supported by substantial evidence in the record for doing so.

**B.  Medical Expert's Opinion.**

Robert McDevitt, M.D., testified as a medical expert (ME) at Wells's hearing.  Tr. 48.  Apparently he only reviewed medical evidence concerning Wells and did not examine or treat her. Tr. 48.

Based on the ME's review of Wells's medical records, which he admitted was not comprehensive, the ME testified Wells's impairments did not meet or equal a listing.  Tr. 48.  The ALJ adopted the ME's conclusion and pointed out that the ME also

"noted [Wells] was functional despite her allegations." Tr. 18,
48. The ALJ also accepted the ME's conclusion that Wells had a
"sort of an attitudinal thing" or problem even though Wells was
not malingering. Tr. 18, 55.

Wells, however, asserts the ALJ erred by not including the
rest of the ME's opinion. For instance, the ME testified he
thought Wells subjectively believed she was severely impaired.
Tr. 55-56. The ME also testified Wells has an "unrealistic"
interpretation of her condition. Tr. 59. Wells believes this
testimony supports a diagnosis of somatoform disorder.

As noted, the Court concludes the ALJ did not provide
legally sufficient reasons for rejecting Dr. Yerby's diagnosis
of somatoform disorder. The ME's testimony concerning Wells's
perceptions of her condition is related to and relevant to her
alleged somatoform disorder as discussed by Dr. Yerby. *See* Tr.
672. *See also DSM-IV* at 485. Evidence that is probative of a
somatoform disorder, therefore, must be considered in light of
Dr. Yerby's opinion.

Accordingly, the ALJ erred to the extent the he did not
consider that portion of the ME's opinion relating to Wells's
alleged symptoms of somatoform disorder.

## II. Steps Two and Four.

Wells contends the ALJ erred by not including somatoform
disorder among her impairments in his Step Two analysis. If the

17 - OPINION AND ORDER

ALJ had included somatoform disorder among Wells's impairments, it is unclear how it would have affected the ALJ's conclusions in the five-step sequential process.

Wells also contends the ALJ improperly assessed her RFC because he did not credit Dr. Yerby's opinion, did not consider the ME's opinion as a whole, and did not include somatoform disorder when considering her limitations.

The ALJ's evaluation of Wells's RFC could well be modified if Dr. Yerby's opinion was fully credited, the ME's entire testimony was considered, and the ALJ found Wells suffers from a somatoform disorder.  Thus, the Court finds the ALJ must reevaluate his conclusions at Steps Two and Four as set out below.

## III. Wells's Credibility.

Wells contends the ALJ erred by finding Wells's testimony not fully credible; *i.e.*, the ALJ found Wells's impairments do not limit her to the extent that she cannot engage in and sustain any basic work activity.  Tr. 16.

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  When construing credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history as well as the

18 - OPINION AND ORDER

claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

When assessing a claimant's credibility, the ALJ must apply the threshold test articulated in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986). The ALJ first must determine whether there is objective medical evidence of an impairment and whether the impairment could reasonably cause some degree of the claimant's symptom(s). *Id*. at 1407. "If the claimant produces evidence to meet the *Cotton* test and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281 (citations omitted). When determining credibility, an ALJ can use ordinary techniques such as the "claimant's reputation for truthfulness and inconsistencies in claimant's testimony." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

A.   **Wells's Testimony**.

Following remand of this matter, Wells testified on February 21, 2006, about experiencing fatigue and exhaustion that "went up to like 100 percent." Tr. 32, 34. She also testified to experiencing headaches that take "two days to get rid of" at times. Tr. 35. Wells stated she did not remember the last time

she held a full-time job and that her primary responsibility was taking care of her son.  Tr. 36-37.  She also stated she previously left a job with her church because of her symptoms.  Tr. 45-46.

Wells testified she sometimes walks around the block for exercise.  Tr. 39.  On occasion, Wells walks to the grocery store, which is about one mile round trip.  Tr. 41.  She testified routine household chores often tire her out or cause her pain.  Tr. 42-44.

**B.  ALJ's Decision.**

The ALJ found Wells was only partially credible.  Tr. 16.  The ALJ opined none of the physicians who evaluated Wells concluded she was disabled.  Tr. 17.  Like the ALJ in the earlier proceedings, the ALJ here noted Wells continued to work part-time even after her alleged disability onset date and appeared to be motivated to claim disability for reasons tied to financial need rather than to disability.  Tr. 17, 84-85.  The ALJ also stated: "Just because an individual may believe they are disabled does not necessarily make it so."  Tr. 16.

The ALJ, however, did not make a finding that Wells was malingering.  The ALJ, therefore, was required to provide clear and convincing reasons for rejecting Wells's testimony.  *Smolen*, 80 F.3d at 1281.

On this record, Wells's subjective belief as to her

20 - OPINION AND ORDER

disability is relevant to whether she suffers a somatoform disorder.  Unlike cases of malingering, somatoform disorder is often characterized by genuine symptoms that are not under the person's intentional control.  *See DSM-IV* at 485.  Nevertheless, the ALJ rejected Wells's testimony without detailed consideration of her alleged somatoform disorder.

The Court, therefore, concludes the ALJ erred when he failed to provide legally sufficient reasons supported by substantial evidence in the record for rejecting Wells's testimony.

### REMAND

The decision whether to remand for further proceedings or for the payment of benefits is a decision within the discretion of the Court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  This decision turns on the likely utility of further proceedings.  *Id.* at 1179.  The Court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed."  *Harman*, 211 F.3d at 1178.  The Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such

21 - OPINION AND ORDER

> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2. When it is not clear whether the ALJ would be required to award benefits if the improperly rejected evidence were credited, the Court has discretion as to crediting the evidence. *See Connett v. Barnhart,* 340 F.3d 871, 876 (9th Cir. 2003).

As noted, the Court concludes the ALJ erred when he rejected Dr. Yerby's opinion without providing legally sufficient reasons for doing so. The ALJ also did not consider all of the ME's testimony. These errors may have affected the ALJ's assessment of Wells's credibility and his conclusions at Step Two, Step Four, and other steps in the sequential process as to Wells's impairments, her RFC, and, finally, her disability. The Court, therefore, concludes further administrative proceedings are necessary.

Accordingly, the Court remands this matter for further administrative proceedings.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 26th day of June, 2007.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge